Filed 2/11/21  P. v. Diaz CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MELISSA PAULINE DIAZ,<br><br>    Defendant and Appellant. | B300369<br><br>(Los Angeles County<br>Super. Ct. No. BA448969)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>CHANGE IN JUDGMENT |

THE COURT:


It is ordered that the opinion filed herein on January 22, 2021, be modified as follows:


1.  On page 1, second line of text after the caption, the word "Affirmed" is deleted and the following sentence is inserted in its place:

Modified and affirmed with directions.

2. On page 2, the last sentence of the first full paragraph, "We disagree and affirm," is deleted and the following text is inserted in its place:

> We disagree and affirm the judgment of conviction. However, in light of the recent change to the maximum term of probation effected by Assembly Bill No. 1950 (AB 1950) (Stats. 2020, ch. 328, § 2, eff. Jan. 1, 2021), we reduce the term of appellant's probation from five years to two years.

3. On page 18, before the Disposition, add the following new part III to the Discussion:

> ### III. In Accordance with Assembly Bill No. 1950, the Term of Appellant's Probation Is Reduced from Five Years to Two Years
>
> While this appeal was pending, AB 1950 took effect on January 1, 2021. (Stats. 2020, ch. 328, § 2.) AB 1950 reduced the maximum probation term for most felony offenses to two years. (§ 1203.1, subds. (a) & (m).) Because the reduction in the length of the probation term has an ameliorative effect, we presume that our Legislature intended to make its effect retroactive to nonfinal convictions in the absence of an express savings clause specifying a contrary intent. (*In re Estrada* (1965) 63 Cal.2d 740, 744–747.) AB 1950 contains no such savings clause.

2

Therefore, in accordance with AB 1950, the maximum term of appellant's probation as to count 1 is now two years.  (Accord, *People v. Sims* (2021) __ Cal.App.5th __, 2021 Cal.App.LEXIS 33, *17–*35 [reaching same result]; *People v. Quinn* (2021) __ Cal.App.5th __, 2021 Cal.App.LEXIS 27, *3–*16 [same].)  We consequently remand the matter to the trial court to correct the minute order governing the length and terms of probation to reflect a two-year term of formal probation.  Should either the People or the defendant wish to make further motions regarding the length or terms of probation, each may file the appropriate motion(s) with the trial court.

4.  On page 18, the Disposition is modified to reflect the change in the judgment as follows:

**DISPOSITION**

The term of probation imposed as to count 1 is reduced from five years to two years.  The trial court is directed to correct the minute order to reflect the imposition of a two-year term of formal probation, and to notify the Los Angeles County Department of Probation of the change to appellant's probationary term.  In all other respects, the judgment is affirmed.

3

This modification changes the judgment.

Appellant's petition for rehearing is denied.

NOT TO BE PUBLISHED.

_____

LUI, P. J.     ASHMANN-GERST, J.     HOFFSTADT, J.

Filed 1/22/21  P. v. Diaz CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MELISSA PAULINE DIAZ,<br><br>        Defendant and Appellant. | B300369<br><br>(Los Angeles County<br>Super. Ct. No. BA448969) |

        APPEAL from judgment of the Superior Court of Los Angeles County.  Richard S. Kemalyan, Judge.  Affirmed.

        Gordon B. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Melissa Diaz appeals the judgment entered following a jury trial in which she was convicted of one count of offering a false or forged instrument for recording. (Pen. Code,[1] § 115, subd. (a).) The trial court imposed and suspended a three-year sentence and placed appellant on formal probation for five years. Appellant contends: (1) the trial court abused its discretion and prejudicially erred by admitting inflammatory and irrelevant photographs into evidence; and (2) the prosecutor committed prosecutorial misconduct by improperly relying on propensity evidence in argument to the jury. We disagree and affirm.

## FACTUAL BACKGROUND

On August 9, 2013, appellant and her husband, Rudy Diaz (Diaz),[2] recorded a deed (the August 2013 deed) at the Los Angeles County Registrar-Recorder/County Clerk's office in Norwalk, which purported to grant a residential property at 2725 Baltic Avenue (the Baltic Avenue property) and four commercial properties on West 15th Street to Indyway Investment (Indyway) for a payment of 21 silver dollars on May 8, 1992. Indyway was a trust created by appellant and Diaz; appellant served as its secretary, appellant and Diaz were its sole beneficiaries, and its location was traced to the Diazes' address in Cerritos.

The August 2013 deed was identical in all material respects to another deed appellant and Diaz had recorded on May 11, 1992

---

[1] Undesignated statutory references are to the Penal Code.

[2] Diaz was a codefendant in the case, but he passed away shortly before trial.

2

(the May 1992 deed).[3]  However, by 2013, appellant, Diaz, and Indyway could no longer claim any interest in the Baltic Avenue property, which had been lost through foreclosure eight years earlier in 2005.[4]

Diaz first acquired the Baltic Avenue property in 1985 before he and appellant were married.  In 1988 Diaz obtained a $97,600 loan secured by a deed of trust on the Baltic Avenue property, which was recorded on March 24.  On April 27, 1990, another deed of trust securing a $127,500 loan to Diaz was recorded.  The May 1992 deed granted Indyway an interest in the property that was subordinate to these loans and had no effect on them:  The 2005 foreclosure of these senior loans and sale of the

---

[3] The only differences between the May 1992 deed and the August 2013 deed were the notarization, Indyway's address, and the name of the trustee.

[4] By 2005, appellant, Diaz, and Indyway had already lost their interests in two of the commercial properties on the deed.  On October 6, 2003, Dennis Cooper purchased the commercial properties at 2030 and 2034 West 15th Street for cash in a tax default sale.  Shortly thereafter, appellant and Diaz claimed they owned Cooper's property because Indyway had "redeemed" it.  On March 18, 2004, Indyway filed a lawsuit against Cooper and Los Angeles County challenging Cooper's ownership of the properties and seeking the cancellation of the tax sale.  Following a bench trial, judgment was entered quieting title in favor of Cooper, and litigation ended in 2008 with the affirmance of the judgment on appeal and the denial of a petition for writ of certiorari by the United States Supreme Court.  (<https://appellatecases.courtinfo. ca.gov/search/case/dockets.cfm?dist=2&doc_id=1131598&doc_no= B192944&request_token=NiIwLSEmXkw%2BWzBZSSFdVE5IIF g6USxfKiI%2BIz5SMCAgCg%3D%3D> [as of Jan. 11, 2021], archived at <https://perma.cc/272X-N3S9>.)

Baltic Avenue property extinguished all prior interests of appellant, Diaz, and Indyway in the property.

On May 8, 2006, after the foreclosure, Longinna Willis purchased the Baltic Avenue property, but lost it through foreclosure in 2010.

On July 8, 2010, Vatana Kim and his two brothers purchased the Baltic Avenue property from Deutsche Bank National Trust Company; a deed of trust and grant deed identifying the Kims as grantees were recorded on the property. Thereafter, Kim lived in the home with his two brothers, father, and sister. He regularly paid his mortgage, property taxes, insurance, and utilities.

On September 19, 2013, a month after the August 2013 deed was recorded, a 60-day notice to quit was placed on the front door of the Baltic Avenue property. Kim reported the notice to quit to the Long Beach Police Department and also went to the county recorder's office, where he learned of the August 2013 deed.

Detective Andre Sanchez from the financial crimes unit of the Long Beach Police Department investigated the incident. Kim showed Detective Sanchez his July 8, 2010 grant deed and other paperwork establishing his ownership and ongoing maintenance of the property. He also showed the detective a copy of the August 2013 deed.

On December 2, 2013, Kim reported to Detective Sanchez that he had been served with an eviction notice on November 27. On January 24, 2014, as Kim was in the process of moving to a new house, and his father was away on vacation, Kim went to the Baltic Avenue property and found that someone had changed the locks and posted a no-trespassing sign on the property. After

4

reporting the incident to Detective Sanchez, Kim had the locks changed back, installed surveillance cameras, and contacted an alarm company.

On January 30, 2014, Kim received a call from the alarm company. When he reviewed the surveillance footage he saw people breaking into the Baltic Avenue house and disabling the surveillance system. Kim called Detective Sanchez. When the detective and other officers arrived on the scene, appellant was standing a few feet from the open passenger door of a Toyota Tacoma truck parked near Kim's house. In response to Detective Sanchez's inquiry, appellant gave her name and said she lived at 2725 Baltic Avenue. The detective stated that someone else lived there, and appellant replied, " 'No. We are tenants in common.' " The burglar alarm at the home was blaring. As appellant and Detective Sanchez walked toward the house, the detective asked appellant to turn off the alarm. Appellant replied that she was unable to do so because someone else had installed it, and she did not have the passcode.

Detective Sanchez and other officers found the kitchen door unlocked and a lockset on the floor. The deadbolt had been removed from the front security door, which was open and secured with a chain and padlock to prevent it from closing. Appellant had the key to the padlock in her purse. In appellant's truck police found several lock sets in a bag and two binders containing the August 2013 deed and numerous photographs of the properties listed on the deed along with the notice to vacate that had been posted on the Baltic Avenue property. Appellant stated that all the items found in the truck belonged to her. Kim provided Detective Sanchez with the keys to the lockset found on the floor as well as the locksets recovered from appellant's truck.

5

In an interview conducted by Detective Sanchez following appellant's arrest, appellant stated that she and Diaz moved into the Baltic Avenue house after they were married in 1988. Eventually they stopped paying the mortgage and property taxes, and moved out when they lost the Baltic Avenue property through foreclosure in 2005.

In 1992 appellant and Diaz transferred the Baltic Avenue property to Indyway for 21 silver dollars after learning in a seminar that they could not lose their interest in a property purchased for 21 silver dollars without a jury trial. Appellant asserted that because there had been no jury trial and Indyway had never sold the property, Indyway still owned it and Kim was a trespasser. Further, appellant claimed that as the secretary and one of the beneficiaries of Indyway, she still owned the Baltic Avenue property. Appellant admitted that Indyway did not pay the mortgage on the property. And while she acknowledged the 2005 foreclosure based on appellant and Diaz's failure to pay the mortgage, appellant claimed that the foreclosure was only against her and Diaz and had no effect on Indyway's property interest.[5]

Appellant told Detective Sanchez that on January 27 or 29, 2014, she had called the Long Beach Police Department for help changing the locks on the Baltic Avenue property. But she never filed a police report over the alleged trespass because she was " 'trying to unravel the fraud' " first.

---

[5] Appellant also asserted that because Indyway had paid 21 silver dollars to the Los Angeles County Tax Assessor's Office in 1992 for the property taxes, appellant, Diaz, and Indyway were exempt from having to pay the property taxes.

6

In 2014 Kim filed a quiet title action against Indyway and the Diazes. On January 29, 2015, a judgment upholding Kim's ownership of the Baltic Avenue property and canceling the August 2013 deed was recorded.

## DISCUSSION

### I. The Trial Court Did Not Abuse Its Discretion in Admitting Photographs of the Baltic Avenue Property Taken After the Recording of the False Deed

Appellant contends the trial court abused its discretion in admitting 26 photographs of the Baltic Avenue property purportedly taken on January 26, 2014. Because the photographs were taken nearly six months after the recording of the false deed, appellant argues the evidence was wholly irrelevant to the only matter at issue, that is, whether appellant *knew* the deed was false when she filed it. Appellant further contends that the photographs were unduly prejudicial and the trial court abused its discretion in failing to exclude the evidence under Evidence Code section 352. We disagree.

### A. *Relevant proceedings*

Over a defense objection on relevance grounds, the trial court admitted 26 photographs contained in a binder seized from appellant's truck and a photo of a no trespassing sign with appellant's phone number that had been affixed to the Baltic Avenue property. Each of the 26 photographs was marked "Indyway Investment's property at 2725 Baltic Avenue, Long Beach, California, on January 26, 2014" along with a description. Some of the photographs showed the outside of the house while others showed the interior.

In its ruling the trial court explained: "I think it's a very, very close call. To the extent there's been testimony that upon the arrival of the officers and inquiry of [appellant], she said that she lived in that location, this evidence may possibly be impeachment. For a variety of reasons, I'm going to allow these photographs, but I believe that the People should not belabor this. I would like to move through it rapidly . . . . I do believe they go to the knowledge element in some respects, and also . . . to the extent to which [appellant] was willing to carry [out the offense]."

Detective Sanchez then identified the items and photographs found in the binders recovered from appellant's truck, including the August 2013 deed, photographs of the outside of the Baltic Avenue property, the no-trespass sign, and photographs of the inside of the Baltic Avenue property showing furniture, clothing, and other items.

## B. *The photographs of the Baltic Avenue property were relevant and not unduly prejudicial*

Appellant argues that the photographs taken after the recording of the false deed constituted character evidence, the sole relevance of which was to portray appellant as a conscious law breaker and to inflame the jury by showing her inclination to invade the sanctity of another person's home. To the contrary, although not dispositive, the photographs were relevant to impeach appellant's statement to Detective Sanchez that she lived at the property and thereby revealed her awareness that she lacked any legitimate ownership interest in the property.

Evidence Code section 1101, subdivision (a) " 'expressly prohibits the use of an uncharged offense if the *only* theory of relevance is that the accused has a propensity (or disposition) to

8

commit the crime charged and that this propensity is circumstantial proof that the accused behaved accordingly on the occasion of the charged offense.' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 406 (*Bryant*).) Although evidence of the defendant's commission of other crimes, civil wrongs, or bad acts is inadmissible to prove the defendant's conduct on a specified occasion, such evidence can be used to attack the defendant's credibility. (Evid. Code, § 1101, subd. (c); *People v. Kennedy* (2005) 36 Cal.4th 595, 620 [limitations on the admissibility of evidence of specific instances of misconduct "do not apply to evidence offered to support or attack the credibility of a witness"]; *People v. Hawthorne* (2009) 46 Cal.4th 67, 99 ["Unless precluded by statute, any evidence is admissible to attack the credibility of a witness if it has a tendency in reason to disprove the truthfulness of the witness's testimony"].) Such evidence may also be admitted to prove a material fact in dispute such as motive, intent, preparation, plan, knowledge, or the absence of mistake or accident. (Evid. Code, § 1101, subd. (b); *People v. Cage* (2015) 62 Cal.4th 256, 273 (*Cage*); *People v. Jones* (2013) 57 Cal.4th 899, 930.)

" 'Evidence Code section 210 defines "relevant evidence" as "evidence . . . having any tendency in reason to prove or disprove any disputed fact *that is of consequence to the determination of the action*." ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 438 (*Pearson*).) If evidence of another instance of defendant's misconduct is relevant to prove some fact other than propensity, the evidence may properly be admitted subject to a limiting instruction upon request. (*Bryant*, *supra*, 60 Cal.4th at p. 406.) We review the trial court's ruling on the admissibility of such evidence for abuse of discretion (*Cage*, *supra*, 62 Cal.4th at

9

p. 274; *Bryant*, at p. 405), reversing only where " 'it is shown " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Jones* (2017) 3 Cal.5th 583, 609, quoting *People v. Merriman* (2014) 60 Cal.4th 1, 74.)

Here, the photographs of the Baltic Avenue property taken after the recording of the false deed were relevant to the disputed issue of appellant's intent and knowledge that the deed was false and to impeach appellant's credibility.

Conviction on the charge of offering a false document for recording required the prosecution to prove that appellant knowingly offered a false "instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States." (§ 115, subd. (a); *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 327 & fn. 4.) The crime "is sufficiently proven when it is shown that the accused intentionally committed the forbidden act." (*People v. Geibel* (1949) 93 Cal.App.2d 147, 168–169; *Abrahamian*, at p. 327 ["An intent to defraud is not an element of a violation of section 115, subdivision (a)"].)

Here, the defense did not dispute that the August 2013 deed was false, but only that appellant *knew* it was false when she offered it for recording. The photographs of the Baltic Avenue property helped establish this element by showing appellant's unlawful campaign to "evict" Kim, who was not even her tenant, instead of taking reasonable and lawful steps to investigate or quiet title. Indeed, appellant's acts of entering and photographing the interior and exterior of the property, unlawfully changing the locks, and disabling the surveillance

10

system appear part of a continuous effort to cloud the title to the property, which began with the recording of the false deed. The photographs were also relevant to expose appellant's lie to Detective Sanchez that she lived at the property, and thus impeach appellant's credibility.

Of course, " '[e]vidence is relevant when no matter how weak it is it tends to prove a disputed issue.' " (*Pearson, supra*, 56 Cal.4th at p. 438.) The photographs of the Baltic Avenue property admitted here were certainly not dispositive on the issues of knowledge, intent, or appellant's credibility. They did, however, have some tendency in reason to prove or disprove disputed facts related to those issues, and were therefore relevant. (*Pearson*, at p. 438.)

Even if uncharged acts evidence is relevant and otherwise admissible, such evidence may nevertheless be excluded under Evidence Code section 352 if its probative value is substantially outweighed by the probability that its admission will require an undue consumption of time, will confuse or mislead the jury, or it is unduly inflammatory or poses a substantial risk of undue prejudice. (*Bryant, supra*, 60 Cal.4th at p. 407; *People v. Wang* (2020) 46 Cal.App.5th 1055, 1076.) The trial court in this case did not abuse its discretion in determining that the photographs of the Baltic Avenue property were admissible under Evidence Code section 352.

In accordance with the trial court's directive that the prosecution not belabor the point, Detective Sanchez's testimony about the photographs was very brief, consisting of just four pages of the reporter's transcript. The detective's straightforward identification of the photographs and general description of the subject matter was neither confusing nor

11

misleading.  And there was nothing inflammatory about the photos, which merely showed furniture and some personal effects in various rooms of a house.  Given that Kim had already testified about discovering the changed locks and break-ins to the house, there was no substantial likelihood the jury would have been inflamed upon seeing exterior and interior photographs of the house.

Admission of the photographs simply did not create a substantial danger of undue prejudice.  (Evid. Code, § 352, subd. (b).)  As our Supreme Court has repeatedly explained, " ' "In applying [Evidence Code] section 352, 'prejudicial' is not synonymous with 'damaging.' " ' [Citation.]  ' " '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case.' " ' [Citation.]  The 'prejudice' which section 352 seeks to avoid is that which ' " 'uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues*.' " ' " (*Cage, supra*, 62 Cal.4th at p. 275; *People v. Williams* (2013) 58 Cal.4th 197, 270.)

In sum, we find no abuse of discretion in the trial court's admission of the challenged photographs under Evidence Code section 1101 or Penal Code section 352.

## II.  Appellant Forfeited Any Prosecutorial Misconduct Claim

Appellant contends the prosecution committed misconduct by arguing guilt based on character evidence, using the events that occurred after August 9, 2013, to paint her "as a law breaker, a con artist, a person worthy of conviction."  However, appellant's failure to object to the prosecutor's argument and request an admonition forfeited any misconduct claim and her

12

further assertion that trial counsel was ineffective for failing to object lacks merit.

## A. *Relevant background*

The central thrust of the prosecutor's argument to the jury was that at least eight years before August 2013, appellant had lost any legal interest in the Baltic Avenue property, she *knew* she had lost the property through foreclosure, and her conduct and the events after she recorded the false deed belied her claim of an innocent mistake. Defense counsel also cited appellant's actions and events after the deed was recorded to argue that appellant believed Indyway still owned the property, the deed she filed "was true," and she was acting within her rights to oust Kim from the property.

In rebuttal, the prosecutor argued that not only had appellant in fact lost the Baltic Avenue property through foreclosure, but no "reasonable person" would think she still owned the property after not making any tax or mortgage payments for eight years. Moreover, the prosecutor argued that "a reasonable person, who was acting in good faith, who was just confused," "a reasonable, innocent person acting with noncriminal intent" would not have tried to evict a person she found living on the property without first checking with the county recorder. The prosecutor continued, "We know that [appellant's] conduct shows that she knows that what she's done is unlawful and that she is going to try her best to get away with something else, but all we have to ask is, does she know it's a false document? She absolutely, based on the evidence, does know it's a false document. There's no reasonable way, no reasonable basis for her to think she owns, Rudy Diaz owns that property in 2013 when this deed is filed."

The prosecutor concluded: "Proof beyond a reasonable doubt is not beyond all possible doubt. It's not about speculation. . . . It's about your reasonable evaluation of the evidence in this case from the witness stand that has to do with Melissa Diaz and what she is [*sic*] knows, and . . . I want to direct you back to follow the jury instructions because you're here to evaluate Melissa Diaz, and everything in what she did, and said, and the way she acted tells you that she knew what she was doing was wrong. She knew that this was a false document not based on any ownership interest and that therefore she should be found guilty of the crimes she is being charged with."

## B. *Appellant forfeited her claim*

" ' "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion— and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' " (*People v. Thomas* (2011) 51 Cal.4th 449, 491; *People v. Hill* (1998) 17 Cal.4th 800, 820; *People v. Cowan* (2017) 8 Cal.App.5th 1152, 1161 (*Cowan II*) [claim of prosecutorial misconduct is reviewable only if timely objection and request for admonition made at trial; in the absence of an objection and request for admonition, matter is reviewable only if an admonition would not have cured the harm].) Moreover, even if an objection was made and sustained, the issue is still forfeited for appeal if an admonition to the jury to disregard the improper comment would have cured the harm, but none was requested. (*People v. Silva* (2001) 25 Cal.4th 345, 373; *Cowan II*, at p. 1161.)

Here, as appellant concedes, defense counsel neither objected to the prosecutor's argument nor requested an admonition. The failure to do so forfeited any claim of

14

prosecutorial misconduct on appeal. (*People v. Fuiava* (2012) 53 Cal.4th 622, 679–680 [where defendant failed to show objection and admonition would have been futile and would not have cured harm, appellate claims of misconduct were forfeited]; *Cowan II, supra,* 8 Cal.App.5th at p. 1161.)

## C. *Trial counsel was not ineffective*

Seeking to avoid forfeiture of her prosecutorial misconduct claim, appellant argues that trial counsel was ineffective for failing to object to the prosecutor's argument and request an admonition.

To establish ineffective assistance of counsel, a "defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009; *Strickland v. Washington* (1984) 466 U.S. 668, 687–688.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Mai,* at p. 1009.) "[W]e 'defer[ ] to counsel's reasonable tactical decisions' and presume that 'counsel acted within the wide range of reasonable professional assistance.' [Citation.] Thus, defendant ' "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " ' " (*People v.*

15

*Arredondo* (2019) 8 Cal.5th 694, 711.) "This rule 'is particularly apt' where, as here, 'the asserted deficiency arises from defense counsel's failure to object. "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." ' " (*Ibid.*)

Appellant cannot establish her counsel's inadequacy in this case for the simple reason that the prosecutor's remarks did not constitute misconduct.

The applicable federal and state standards for establishing prosecutorial error or misconduct are well settled. " ' " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*People v. Suarez* (2020) 10 Cal.5th 116, 175; *People v. Williams* (2013) 56 Cal.4th 630, 671; *Parker v. Matthews* (2012) 567 U.S. 37, 45; *Darden v. Wainwright* (1986) 477 U.S. 168, 181 ["The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process' "].)

While a prosecutor has significant latitude "in discussing the legal and factual merits of a case during argument," it is improper for the prosecutor to misstate the law, and in particular, the prosecution may not attempt to reduce its burden to overcome reasonable doubt on all elements of the offense. (*People v. Centeno* (2014) 60 Cal.4th 659, 666; *People v. Marshall*

(1996) 13 Cal.4th 799, 831.) " '[W]hen attacking the prosecutor's remarks to the jury, the defendant must show that, "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 111, quoting *Centeno*, at p. 667.) In reviewing a claim of prosecutorial misconduct based on a prosecutor's argument to the jury, " 'we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Centeno*, at p. 667; *Bell*, at p. 111.)

Here, the prosecutor pointed to appellant's conduct in using unlawful means to assert a property interest she knew she did not have as evidence that the recording of the false deed was not some innocent mistake, but part and parcel of an effort to cloud the title and claw back a property appellant had lost to foreclosure eight years earlier. The prosecutor's argument did not constitute an improper reliance on character evidence, but merely highlighted evidence that had been properly admitted to impeach appellant's credibility and to prove material facts in dispute including intent, plan, knowledge, and the absence of mistake or accident. (Evid. Code, § 1101, subd. (b); *Cage, supra*, 62 Cal.4th at p. 273; *People v. Jones, supra*, 57 Cal.4th at p. 930.) Defense counsel cannot be deemed to have provided ineffective assistance for failing to object to proper argument. (*People v. Turner* (2004) 34 Cal.4th 406, 431 [where defendant's prosecutorial misconduct claim fails, "his ineffective assistance of counsel claim predicated on the failure to object to this misconduct fails"].)

17

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.